# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**
        **Plaintiff,**

  v.                                             **Case No. 05-CR-245**

**SCOTT MAAS,**
        **Defendant.**

## MEMORANDUM

While hunting in North Dakota in 2003, defendant Scott Maas mistakenly shot two waterfowl out of season. Despite realizing his mistake, defendant transported the birds to Wisconsin where a state conservation warden observed them in a taxidermy shop. Law enforcement officials investigated and in January 2005 found a shotgun and a rifle in defendant's home.[1] Because defendant had been convicted of felony theft in May 1999, he could not possess firearms. The government charged defendant with possessing firearms as a felon, 18 U.S.C. § 922(g), and transporting in interstate commerce wildlife obtained in violation of state law, 16 U.S.C. §§ 3372 & 3373.

Defendant pleaded guilty to the charges, and the probation office prepared a pre-sentence report ("PSR"), which assessed a base offense level ("OL") of 14 on the felon-in-possession count, U.S.S.G. § 2K2.1(a)(6)(A), and a base OL of 6 on the wildlife count, U.S.S.G. § 2Q2.1(a). The PSR combined the two counts under § 3D1.4, producing 1 ½ units and an adjusted OL of 15, then subtracted 2 for acceptance of responsibility, § 3E1.1(a), for a final OL of 13. Defendant raised two objections.

---

[1] The investigation revealed that defendant used a different gun to kill the birds in North Dakota in 2003.

**I.**

Defendant first objected to the base OL on the felon-in-possession count. As noted, the PSR set the OL at 14 under § 2K2.1(a)(6)(A), which applies when the defendant was a "prohibited person." The PSR declined to apply § 2K2.1(b)(2), which states:

> If the defendant, other than a defendant subject to subsection (a)(1), (a)(2), (a)(3), (a)(4), or (a)(5), possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6.

U.S.S.G. § 2K2.1(b)(2).[2] Application note 7 explains:

> Under subsection (b)(2), "lawful sporting purposes or collection" as determined by the surrounding circumstances, provides for a reduction to an offense level of 6. Relevant surrounding circumstances include the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law.

U.S.S.G. § 2K2.1 cmt. n.7.

Both defendant and the government argued that § 2K2.1(b)(2) applied because the weapons were both hunting rifles and defendant had not unlawfully discharged them. The PSR stated that, as a felon, defendant could not lawfully possess guns for any purpose. However, § 2K2.1(b)(2) plainly applies to prohibited persons under § 2K2.1(a)(6) and does not categorically exclude felons or any other class of prohibited persons. See, e.g., United States v. Moit, 100 F.3d 605, 606-07 (8th Cir. 1996) (finding felon eligible for the reduction). Whether a court should grant the reduction depends on the defendant's motive and whether

---

[2]Sections (a)(1)-(5) apply if the defendant has previously been convicted of a crime of violence or controlled substance offense, or the firearm in question was otherwise illegal (e.g., an assault rifle or sawed-off shotgun). Because defendant had no such convictions and the guns were otherwise legal, these provisions did not apply in the present case.

a non-felon could legally possess the weapon(s) under the same circumstances. As the court stated in United States v. Shell, 972 F.2d 548, 552 (5th Cir. 1992):

> [T]he reduction provisions of the guidelines for felons in possession do not turn on the axiomatic truism that a felon can never lawfully possess a firearm. The entire reduction provision would clearly be subsumed in such a proposition. Rather, the availability of the reduction turns on the purpose or use for which the firearm is acquired or possessed and the lawfulness of such use if it were to be exercised by a citizen not under any legal disability – lawful hunting, lawful target practice, or lawful gun collecting.

In the present case, defendant possessed the two firearms solely for hunting purposes. The PSR noted that defendant fired one of them during the 2004 deer hunting season but did not suggest that he had done so illegally. Cf. United States v. Waggoner, 103 F.3d 724, 726-27 (8th Cir. 1997) (finding that district court properly denied reduction to felon who hunted in violation of a condition of probation); United States v. Stewart, 780 F. Supp. 1366, 1370 (N.D. Fla. 1991) (noting that the reduction should not be granted if the gun was used to commit hunting violations). Further, defendant did not use either of the guns to shoot the birds that were the subject of the wildlife count. Finally, the wildlife count did not allege illegal hunting; rather, the crime was illegally transporting the birds across state lines after defendant realized he shot them mistakenly. Thus, I concluded that the base OL on the felon-in-possession count was 6.

**II.**

Defendant also objected to the PSR's application of the multi-count adjustment under § 3D1.4, arguing that the counts should instead be grouped § 3D1.2. Defendant asserted that both counts involved the same victim – society at large – such that § 3D1.2(a) applied. He further noted that both counts arose out of the same hunting trip and involved conduct not dramatically separated in time. The government agreed that the counts should be grouped but relied on § 3D1.2(c), which requires grouping when one count embodies conduct that is

-3-

treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to the other count. The PSR noted that the two counts involved different guns and conduct occurring almost two years apart, and thus declined to group them.

I concluded that the counts did not qualify for grouping under § 3D1.2. First, they did not involve the same victim and the same act or transaction under § 3D1.2(a). When society is the victim, courts must look at the specific societal interest harmed. U.S.S.G. § 3D1.2 cmt. n.2 ("In such cases, the counts are grouped together when the societal interests that are harmed are closely related."). In the present case, the societal interest served by the felon-in-possession statute is keeping guns out of the hands of those who cannot be trusted with them, whereas the societal interest served by the wildlife statute is the preservation and maintenance of wildlife. Thus, the societal interests in question are not closely related. In any event, § 3D1.2(a) applies only if the counts are based on the same act or transaction, which was not the case here. The guns found in defendant's home in Wisconsin in 2005 were not used to kill the birds in North Dakota in 2003.

Second, the two counts did not involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan under § 3D1.2(b). As discussed, the victim was not the same, and nothing in the record suggested a common scheme or plan.

Third, neither count involved conduct treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to the other under § 3D1.2(c). Section 3D1.2(c) was designed to prevent double counting, U.S.S.G. § 3D1.2 cmt. n.5, which did not happen in this case. The base OL on both counts was 6, and no adjustments applied. The fact that the wildlife count related to a hunting trip and the OL on the felon-in-possession count was reduced under § 2K2.4(b)(2) does not mean that the guidelines treated either count as an

offense characteristic of the other. Defendant received a <u>reduction</u> because of the hunting connection, not an enhancement.

Fourth, § 3D1.2(d) did not apply because the OL was not based on the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, nor were the offenses ongoing or continuous in nature and the offense guidelines written to cover such behavior.

Finally, I noted that courts have consistently declined to group firearm counts with non-firearm counts. <u>E.g.</u>, <u>United States v. Herrera</u>, 265 F.3d 349, 353 (6th Cir. 2001) (declining to group illegal re-entry and alien in possession of firearm counts because the law prohibiting illegal aliens from possessing firearms protects society against those who have been determined unqualified to possess firearms, while the law prohibiting an alien from illegally entering the United States after a previous deportation protects the country from illegal immigration); <u>United States v. Salgado-Ocampo</u>, 159 F.3d 322, 328 (7th Cir. 1998) (same); <u>see also</u> <u>United States v. Kayfez</u>, 957 F.2d 677, 679 (9th Cir. 1992) (declining to group counterfeiting and possession of an unregistered silencer because the offenses invade different interests: one undermines the integrity of the nation's currency and perpetrates a fraud on merchants, while the other threatens personal safety).

Thus, I did not group the two counts. Rather, I applied the multi-count adjustment under § 3D1.4, which produced 2 units, for an adjusted OL of 8. With the reduction for acceptance of responsibility, the final OL was 6.

**III.**

For the foregoing reasons, I accepted defendant's objections in part and overruled them in part.

Dated at Milwaukee, Wisconsin, this 25th day of April, 2006.

/s Lynn Adelman
_____
LYNN ADELMAN
U.S. District Judge